IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

HAROLD BLACK,

    Plaintiff,

v.

JOHN E. POTTER, Postmaster General,

    Defendant.

No. C 08-01344 SI

**ORDER DENYING PLAINTIFF'S REQUEST FOR A PROTECTIVE ORDER**
**[Docket No. 53]**

Plaintiff has filed a request for a protective order preventing defendant from deposing plaintiff's union representative, Mr. Williamson, on the ground Mr. Williamson's communications with plaintiff in connection with his representation of plaintiff during the EEOC process are subject to the attorney-client privilege. Defendant counters that the federal common law of privileges does not extend protection to communications with a lay union representative.

**DISCUSSION**

Because plaintiff's complaint alleges violations of Title VII, federal privilege law governs these proceedings, including discovery. *United States v. Zolin*, 491 U.S. 554, 562 (1989). Under Federal Rule of Evidence 501, determinations of privilege under federal law are "governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Rule 501 provides courts with "the flexibility to develop rules of privilege on a case-by-case basis." *Trammel v. United States*, 445 U.S. 40, 47 (1980).

Federal courts have reach differing conclusions with respect to whether communications between an individual and his or her lay representative are privileged under federal common law. The majority

of courts have held that such communications are not privileged. For example, in *In re Grand Jury Subpoenas*, 995 F. Supp. 332 (E.D.N.Y.1998), the Eastern District of New York held that no privilege attached to communications between police officers and the union representatives who advised them before the union retained counsel to represent the officers during a grand jury investigation. The court noted that the officers had failed to establish that the communications were actually made in confidence, "that total confidentiality was essential to the maintenance of [the] relationship" between the officers and their representatives, or "that the union relationship is so highly valued by an ordered society that its confidences warrant protection even at the cost of losing evidence important to the administration of justice." *Id.* at 334-35. Other courts have reached similar conclusions. *See, e.g.*, *Nemecek v. Bd. of Governors of the Univ. of N.C.*, No. 98-0062, 2000 WL 33672978 (E.D.N.C. Sep. 27, 2000); *Walker v. Huie*, 142 F.R.D. 497 (D. Utah 1992).

In *Woods v. N.J. Dep't of Educ.*, 858 F. Supp. 51 (D.N.J. 1993), however, the District of New Jersey applied the attorney-client privilege to communications between a lay advocate and the parents of a disabled child in connection with an administrative hearing under the IDEA. The court's holding was premised upon the fact that state law expressly permitted appearance by lay advocates, that such advocates were bound by the Rules of Professional Conduct, and that the traditional purposes of the privilege, including "encourag[ing] uninhibited discourse" between clients and attorneys, were furthered by protecting the communications at issue. *Id.* at 55. The court in *Woods* cited a California case now relied on by plaintiff, *Welfare Rights Org. v. Crisan*, 661 P.2d 1073, 1076-77 (Cal. 1983), in which the California Supreme Court determined that a state statute expressly providing the right to lay representation in welfare benefits hearing implied a legislative intent to extend protection to communications between welfare claimants and their lay representative.

As the above citations make clear, courts that have protected communications between client and lay advocate have emphasized the statutory or regulatory authority for the lay representation and the fact that extending protection would further the traditional purposes of the privilege. Here, EEOC regulations plainly provide a right to lay representation. *See* 29 C.F.R. § 1614.605(a) ("At any stage in the processing of a complaint, . . . the complainant shall have the right to be accompanied, represented, and advised by a representative of complainant's choice."). The regulations also provide for

2

disqualification of a lay representative in case of conflict of interest. *Id.* § 1614.605©. Moreover, in the Court's view, protecting the confidentiality of communications between an aggrieved employee and the union representative who is acting as the employee's advocate in EEOC proceedings furthers the traditional rationales underlying the attorney-client privilege. Thus, in principle, the privilege may apply to protect specific communications between plaintiff and Mr. Williamson. However, any privilege does not extend to communications plaintiff could not have intended to keep confidential. The primary topic on which defendant states it intends to depose Mr. Williamson concerns instructions plaintiff may have given Mr. Williamson to sign an agreement terminating or transferring plaintiff from his employment with defendant. If plaintiff directed Mr. Williamson to sign a transfer agreement on his behalf, he could not have intended for that communication to be kept confidential, and neither the communication nor the resulting documents would be protected by the privilege.

Accordingly, the Court hereby DENIES plaintiff's motion for a protective order entirely precluding defendant from deposing Mr. Williamson or obtaining documents created in the course of his EEO representation of plaintiff. However, if at the deposition defendant attempts to question Mr. Williamson about communications that were made in confidence, intended to be kept confidential, and otherwise meet the strictures of the attorney-client privilege, counsel may properly object and instruct Mr. Williamson not to answer.

**IT IS SO ORDERED.**

Dated: February 6, 2010

SUSAN ILLSTON
United States District Judge